THE PEOPLE, PLAINTIFF AND RESPONDENT, v. RAMÍREZ,
DEFENDANT AND APPELLANT.

APPEAL from the District Court of Ponce in a Prosecution
for False Representation.

No. 771.—Decided May 17, 1915.

FALSE REPRESENTATION—OBTAINING MONEY UNDER FALSE PRETENSES.—It is elementary that a false representation as to a future event cannot serve as ground for a conviction for the crime of obtaining money under false pretences. The pretence must be a false representation as to an existing fact or past event.

ID.—ID.—PROMISE TO CONTINUE IN EMPLOYMENT.—In the case at bar the accused, who was employed as a letter-carrier in the Ponce postoffice on December 11, 1912, signed a document addressed to Santiago Oppenheimer Dalmau authorizing him to retain his salary check for that month, amounting to $65, and deliver the same to Juan Bautista Pou, from whom he had received the said amount. A few days thereafter the accused embarked for New York, was dropped from the pay-roll and thus lost the salary he would have earned during the remainder of the month. *Held:* That as there was absolutely no misrepresentation other than the pretence or implied promise that the defendant would continue in his employment as a letter-carrier during the remainder of the month, the evidence was not sufficient to support a conviction for false representation.

The facts are stated in the opinion.

*Mr. Salvador Mestre, fiscal,* for The People.

*Mr. Leopoldo Tormes* for the appellant.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Appellant was convicted in the Ponce District Court of obtaining money under false pretenses upon an information charging the offense as follows:

"The said José Ramírez Bonilla, in Ponce, within this judicial district, during the month of December, 1912, knowingly and wilfully, through false and fraudulent representations, and with the intent of defrauding Juan Bautista Pou, offering him as security his salary as a letter-carrier for the said month of December, 1912, obtained and received from said Juan Bautista Pou the sum of $65, well knowing that no such sum was to be received by him, thus defrauding said Juan Bautista Pou in the said amount of $65."

Defendant, a letter-carrier employed in the Ponce postoffice, on December 11, 1912, obtained from the prosecuting

witness a certain sum of money found by the jury to be in excess of $50 and signed the following document:

"Mr. Santiago Oppenheimer Dalmau. Present. Esteemed Sir: You may retain my check for the current month which, after deducting the days I have been absent from the office, amounts to $65, which sum I have received from Mr. Juan Bautista Pou to whom you may deliver said amount of $65. Ponce, December 11, 1912. José Ramírez."

Within a few days thereafter he embarked for New York, was dropped from the pay-roll and thus lost the salary which otherwise he would have earned during the remainder of the month. The case turns upon the question of whether or not the obtaining of money in this way with the deliberate intention existing at the time of abandoning the employment and consequent knowledge that the order would not be honored nor the unearned salary paid, but without express representation in this regard, constitutes the offense defined in section 470 of the Penal Code, which provides that—

"Section 470.—Every person who knowingly and designedly, by false or fraudulent representations or pretenses, defrauds any other person of money or property, or who causes or procures others to report falsely of his wealth or mercantile character, and by thus imposing upon any person obtains credit, and thereby fraudulently gets into possession of money or property, is punishable in the same manner and to the same extent as for larceny of the money or property so obtained."

We need not set out in detail the instructions given the jury upon this phase of the case, the various motions made by the defense, rulings of the court thereon, exceptions taken and errors assigned; nor, under the view we take of the matter, is it necessary to discuss any of the other questions raised.

"The pretense must be a representation as to an existing fact or past event, and not a representation as to something to take place in the future. A mere promise to do something, relating as it does to a future event, is not within the statute.

"While the crime is not committed by a mere false promise without a false statement of fact, a false statement of fact may become effective only by being coupled with a false promise. When this is the case the statement of fact and the promise may be considered as together constituting the false pretense and a conviction may follow, or, if the statement of fact and the promise can be separated and prosecutor relied in part on the former, the promise may be disregarded and defendant be convicted on the statement of fact.

"Some courts have held that a state of mind is a fact, and that, therefore, a false statement as to the intention of the accused is a false pretense as to an existing fact. The logical application of this doctrine, seemingly not recognized by the courts that have adopted it, is to bring within the statute all promises as to future conduct, for since it is a generally recognized principle that the character of the pretense is to be tested, not by the very words used by defendant in making the representation, but by the impression his words convey, as a promise to do a thing always implies an intention to do it, the promise as such may be ignored and defendant convicted on the implied statement of intention. This very thing has been done by some courts where the representation has been as to the power of defendant to do a thing. Other courts have held that a representation as to intention is not within the statute. A false statement of an expectation is not a false pretense within the statute." 19 Cyc., 394-398.

"The coupling of a future promise with a false pretense does not relieve the false pretense of its criminal character. It is generally held that the consequences attached to a false statement as to a past or existing fact are not overthrown by an accompanying promise to do some act in the future which operated as a part of the inducement under which the prosecutor parted with his property." *State* v. *Briggs,* 7 L. R. A., new series, 278, and note.

"Under modern statutes on false pretenses, according to the better authority, the mere drawing and delivery of a check to a third person without explanation, is equivalent to a representation that the drawer has funds or credit in the bank, and, if known to be untrue, is false pretense. But the contrary is held in a few instances. *State* v. *Hammelsey,* 17 L. R. A., new series, page 244 and note.

"Securing property for a check which the maker represents is good and will be paid when he in fact intends to stop payment upon it, does not render him guilty of obtaining property by false pretenses, within a statute making punishable any person who, by any false pretense, obtains from any other person any valuable thing

with intent to cheat or defraud." *People* v. *Orris,* 41 L. R. A., new series, 170.

"The elements constituting the crime of obtaining property by false pretenses are concisely set forth in the quotation from 2 Bishop's New Crim. Law, § 415, used by the court in *People* v. *Orris,* as follows: 'A false pretense is such a fraudulent representation of an existing or past fact, by one who knows it not to be true, as is adapted to induce the person to whom it is made to part with something of value.'

"As shown by the above quotation, it is elementary that a false pretense as to a future fact or event will not support a conviction for obtaining property by false pretenses. It is generally held that the giving of a worthless check constitutes a representation that the drawer has credit with the drawee for the amount involved, and that such a representation relates to an existing fact, so that a prosecution for obtaining money by false pretenses may be maintained. This question, however, was not involved in *People* v. *Orris,* as it was there conceded that the drawer had money in the bank upon which the check was drawn. The simple question remaining after the above admission was whether the defendant's intention to stop payment on the check related to a past, present, or future fact. It is clear that it did not relate to the first two, and equally clear that it did relate to the last. It is thus obvious that one of the elements of the crime charged was lacking, and that no conviction could be sustained.

"The decision in *People* v. *Orris* appears to be the first to have passed upon the point under discussion, and it is therefore of no little interest and value. Of course, a different conclusion might be reached in a case where the drawer had no funds on deposit, if such a case could arise, when the intent to stop payment was also present, on the theory that the giving of a worthless check amounts to a representation that the drawer has a credit with the drawee; but it seems clear that no conclusion other than that reached in *People* v. *Orris* could be considered sound under the facts there involved. Statutes may be passed which are broad enough to cover false statements relating to future events or facts. Under such statutes, of course, a different result would be possible." Note to *People* v. *Orris, supra.*

In the case at bar there was absolutely no misrepresentation other than the implied pretense or promise that defendant would continue in his employment as letter-carrier during the remainder of the month. Upon principle it is impos-

sible to distinguish the present case from the negotiation of a check with the deliberate intention of stopping payment. In fact that is substantially what defendant did. He signed an order to pay, to all intents and purposes a check against his salary for the current month; then by his subsequent conduct he virtually countermanded the order—stopped payment on the check.

The judgment cannot stand.

*Reversed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.